Good morning, Your Honors. Good morning. May it please the Court, my name is Jay Marks, I represent Mr. Richard Amos. Before I enter into my argument, Your Honor, I would like to, Your Honors, I would like to make a minor correction to our reply brief on the record because there is an error there that I would like to draw the Court's attention to. We, I, said that Velasco Hiron from the Seventh Circuit was an unpublished case and in fact that is not correct. It is indeed a published case and it is currently on review for cert before the Supreme Court on this very issue of Rodriguez, Rodriguez and sexual abuse of mind. Your Honors, we are asking the Court today to find three things. The first is that Maryland's former Article 2735A is categorically not sexual abuse of a minor for purposes of the aggravated felony definition of sexual abuse of a minor at 8 U.S.C. 11-01-43A. We are also asking the Court to find that the BIA erred in applying matter of Rodriguez, Rodriguez and ignoring De Asibara to determine whether Article, former Article 27A section, pardon me, Article 27 Section 35A constitutes sexual abuse of a minor. And we are also asking the Court today to find that the BIA erred in affirming the immigration judge's decision in finding that the statement of charges and probable cause were incorporated into the indictment. I don't see that argument in your initial brief. Correct. Your Honors. Not in your reply brief either. No. Doesn't surface until your 28-J letter, does it? That's correct. Your Honors are absolutely right. You're actually hearing eliminating 28-J. Well, if I could be heard on the waiver argument quickly on the Harcum issue. Having quickly done some research on this issue, I know that while the rule is certainly to preserve the fairness and integrity of the proceeding, the Court also has a certain discretion in this area. And in this case, while we did not raise it, the Petitioner did not raise it, the government spent substantial real estate in its brief to discuss this issue, even though we never raised it. So the issue of fairness might well be turned to there is no unfairness to the government if the Court allows the Harcum argument to proceed. And there would be unfairness to Petitioner if we weren't allowed to simply address it and alert the Court to what is in the record and what is a fairly clear issue in the record. It's not really unfair to the Petitioner if the Petitioner didn't see fit to raise it, though. Well, if the government raises it subsequently. If the government had ignored it, I think Your Honor, I would agree with Your Honor. However, now the government has raised it in four pages of its brief. It's asking us to penalize the government for being thorough. It doesn't have much traction as an argument. Yes, Your Honor. May I proceed? Certainly. Thank you. Maybe, since we're paused here. Yes, Your Honor. Were the Board's decisions here precedential? Its first decision, it was a three-member, but it doesn't look to me like it was published. Was it published? It was not. So, is it precedential? No. And what's the basis for saying that? Because it is an unpublished decision that is not citable by other Practitioners before the Immigration Court or before the Board. Is there some rule that says that? There is, Your Honor. Yes. Your Honors, former Article 27, Section 35A is categorically not sexual abuse of a minor, and this Court has already said so. That was present in the Guidelines. And the interesting situation that the Board has put this Court in, I think, is that we have identically worded statutes, although in two different contexts. We have identically worded statutes that will, if interpreted differently, will result in the exact same, for all intents and purposes, the exact same statutes being interpreted in a completely different way. The whole difference is, isn't it, that we're talking about this in the administrative agency context, and their actions, and our appropriate review, as opposed to a decision that comes directly up to us regarding application of the Sentencing Guidelines. Correct. Why isn't that all the difference in the world? Well, because there is, in Duenas-Alvarez and in, I believe, Taylor, all of these Supreme Court cases that discuss cases that may not be immigration cases, are applying equally these phrases, crime of violence. They're applying these phrases equally, with equal force and equal application, in the world of immigration, just as they're applying them in the world of the ACCA or Sentencing Guidelines. In other words, it would be quite a messy situation, indeed, if ACCA and Sentencing Guideline cases were interpreted, the same words in those cases were interpreted one way, and then we get to immigration, and they're interpreted in a completely different way, or vice versa. So I think for purposes of... But the problem, the difference is, in both of those cases, courts are interpreting statutory language. And in the other case, we are, as my colleague has just said to you, looking at statutory language, which is first interpreted by the administration. So maybe you should move on to another. I hear that quite clearly, and might as well get to the nub of the issue, which in this case, I think, is Rodriguez, Rodriguez, and the deference that this court may or may not owe to that case. I see probably six reasons why this court owes only Skidmore deference to Rodriguez, Rodriguez. Granted, it was an en banc case, where the Board of Immigration Appeals should be speaking in a full-throated and certainly well-reasoned way, or in its expression of what constitutes a generic sexual abuse of a minor, what constitutes the crime of sexual abuse of a minor in generic terms. But what we get is, as the Seventh Circuit said in Heron, is just them muddling through. It's even less than them muddling through. What we've got is an opinion that specifically states that it is not adopting the federal statute, that it doesn't adopt indeed, but it says it's not adopting it as a standard or a definition, it's merely a guide, and that would be the first piece of evidence that we would submit, that that is really only worthy of Skidmore deference. They, on page 995 of the BIA's decision, they state, quote, we find the definition at 18 U.S.C. 3509 to be a useful identification of the forms of sexual abuse. On page 996, they say it is a reasonable interpretation. But if we are being given a full-throated, en banc decision on the issue of what is generically sexual abuse of a minor, then where is Taylor here? Where is a correct, an analytically correct analysis, excuse me, analysis pursuant to Taylor, where the BIA provides a generic structure whereby practitioners in immigration world and the appeals courts, federal appeals courts, can then measure the 50-plus state statutes that define child abuse, sexual abuse of a minor. So... Well, under any definition of sexual abuse of a minor, how is this not sexual abuse of a minor? How is the... What happened here? Well, under Diaz-Ibarra, it's not because there was no gratification. That's why. And because this court has said that, in Diaz-Ibarra, that it's... Because there is no gratification, this is not sexual abuse of a minor. I apologize. In Cabrero-Montzor. What is the happy note? What other purpose could there have been other than sexual gratification? Well, as heinous as horrible... For the oral sex of a minor. And I don't know that that's your answer. You're going to the facts. What your answer has to be is that the Maryland statute would criminalize things other than what would be covered by what was talked about in Rodriguez, Rodriguez, right?  It goes... It's broader than Rodriguez, Rodriguez. It goes far beyond anything that would be in Rodriguez, Rodriguez. So that... The problem is that, in this case, the incorporation of the statement of probable cause into the indictment was impermissible. And it allowed the immigration judge, incorrectly, to look at facts, which is exactly what is not supposed to happen. Aren't... There aren't... Doesn't the Fourth Circuit... Our presidents say that, in Maryland, the statement of charges is part of the charging document? Not to mention that it was specifically incorporated into the indictment here. But it... Well, that's the problem. It wasn't specifically incorporated. There was no explicit incorporation under Harcum and Donnell. And that is the fatal flaw with the immigration judge's use of those documents and then the BIA's approval of the use of those documents. They were two separate cases. They were never explicitly incorporated one into the other. Well, maybe I'm misremembering it. That's entirely possible. State. But did the immigration judge rely on that element? I thought that what the immigration judge did, basically, was look at Rodriguez-Rodriguez and say, well, really, what they're doing there is following that federal statute 3309. This is clearly within 3309, the end. My... I was reviewing, Your Honor, the... In answer to that question, the immigration... Pardon me, the BIA decision of July 2014, which was the denial of petitioner's motion to reconsider, in which the board explicitly says, we are not... We disagree with the Harcum position that the petitioner is raising, and we agree that the immigration judge did nothing wrong. And so we affirm that part of it. I don't know... You may have answered my question, but you did... I didn't understand the answer. I'm so sorry. So the Board of Immigration Appeals, in its July 2014 decision... Yes. ...affirms the immigration court's use of the charging document. Okay. And finds no violation of Harcum in that, in what the immigration judge did. That wasn't... Okay. Never mind. I know that. I... May I proceed, Your Honors? Sure. The other... One of the other items that I think is important that the court understand is that the term sexual abuse of a minor is not a term of art in immigration world, peculiar to immigration world, or special to immigration world, unlike a term like moral turpitude or extreme hardship. Those are terms that the BIA... That's well within the BIA's bailiwick... Why can't they... Why wasn't it reasonable for them to apply 18 U.S.C. 3509? Because... Of sexual abuse. Yeah. What was wrong with what they did there? It was the way they selected it. They did not go through any kind of Taylor analysis. They cherry-picked the definition for... Really with the intent to deport Mr. Rodriguez-Rodriguez. They analyzed the two... Well, what kind of analysis did they have to go through if they said that this is the definition that we think is appropriate to apply in this context? In 1999, when they decided this, Taylor had already been in existence for nine years, and yet there is absolutely no reference to it. Well, why do they have to have a reference to it? I don't understand. Because what they're telling us to do is engage... I see that my time is up, Your Honors. You can answer the question. Thank you. What they're asking us to do is engage in a categorical analysis, and yet they're not providing the appropriate... They're not doing it correctly, to put it bluntly. They are not looking for the minimum requirements necessary to engage in the activity. And then we can all measure our state statutes by the generic definition that the Board sets up. And that is why it's not so much the substance of what the Board is doing in Rodriguez-Rodriguez that is problematic, but it is the way, the shoddy way they go about it. I see my time is up. At some point in your argument, can you tell me what the elements are of this offense? The elements of the offense that the petitioner was convicted of? The BIA. Oh, the elements for the BIA's definition? The elements. Usually when we talk about statutes, we talk about the elements. Right. Well, they defined the term, as you've recognized, by 35098. The term sexual abuse... No, no, no, no. They didn't define it that way, remember? They used it as an interpretive touchstone. You're absolutely correct, Your Honor. So what is the definition? Let's just leave it aside. What I guess I'm trying to get at is I'm really sort of befuddled by exactly what we look at. But assume we had a clean record and we didn't have the description of the contact, the conduct. I take it your position would be the same, right? You would say that, using the categorical approach, that this does constitute an appropriate predicate for the BIA purposes. And so when we do that, we look at what the elements are of the federal offense, and then we match that up with the elements of the state offense. Right? So what I'm asking you is, help me with the first step. What are the elements of the BIA offense? Well, the way that the board has defined it is by looking at, as this court did, the common sense definitions of abuse. It's not defined by a crime, for example, the way that many other aggravated felony I'm sorry, by a federal statute. There's no reference to it. So it's not as though I can readily pinpoint elements that are specified in a federal criminal statute because the way that the board has chosen to approach this is by recognizing that states are going to define sexual abuse of a minor in such a, you know, in a variety of ways that they're trying to encompass this concept of what it means. So the BIA is the authoritative source on this statute, on the immigration purposes, so it can make this call. So it would seem to me that the call it made in Rodriguez-Rodriguez, that everything, any state statute that comes within the description that was given in Rodriguez-Rodriguez would be, for purposes of the BIA, sexual abuse of a minor. But anything that's not, it seems to me, is not covered by the BIA's definition. If a statute does not fall within the way that the board has interpreted the phrase, then it categorically... The BIA interpreted it in Rodriguez-Rodriguez. Were the decisions in this case presidential? No. They were not presidential themselves because they were unpublished board decisions, but they were applying published precedents. I understand that. Because I may say, everything, at least for my purposes, everything that the board did in BIA in the Rodriguez-Rodriguez is the call on what the BIA definition is of sexual abuse of a minor. I mean, that's what the law is. Right. And so if you line it up to the, I think it was a Texas statute that was the issue there. Right. And so you line it up, the elements there, you can tell that you're within the definition. But the Maryland statute is broader than the Texas statute. It is broader. So that's why I'm trying to tease out where we get the overlap. Because as I read the Supreme Court cases, if it's broader, there's not a match. Give us the least culpable conduct under the Maryland statute and then show us how it also falls under section 3509. Yes, Your Honor. And this is exactly the argumentation that was missing from my opposing counsel's brief. I'd just like to point that out. I did point out that this was waived along with other arguments. I did go on to address them because, as you've said, in an interest of thoroughness. I just want to point that out that he has waived that. Well, you know, the United States achieves justice. It's one. Right. That's what the United States attorney always says. Try to do a thorough job, Your Honor. But yes, that is exactly what my brief attempted to show, which is that because Maryland does read it broadly, what I found in reading an exhaustive list of state cases is that the least culpable conduct is when somebody, in essence, assists or countenances someone else's sexual child abuse. So, in other words, it's not that person directly who is abusing the child, but they are allowing someone else. It's an omission. It's a type of omission. By any gratification. Right. Not by that person. Exactly. And that is why it's fundamental to the government's position that this court does not adopt a narrow definition of sexual abuse of a minor contrary to what the board has said in Rodriguez so that it's not just about intent to gratify because, of course, if that were the definition the government concedes that the Maryland statute would be broader than that because it doesn't specify that as an intent. They're very concerned about protecting children. So, how does that act fall within the statutory scope? So, the 3509A8 defines sexual abuse. This is the interpretive touchstone that the board has identified as how to decide whether a crime is sexual abuse of a minor. And the term sexual abuse is defined to include the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, and then I tried to emphasize this, or assist another person to engage in sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children or incest with children. This is sort of a lengthy, wordy one, but what I want to make clear is that it includes assisting someone else. Right. And I think that's correct. But you and I already established that the BIA did not adopt 3509A8. It has not. Right. The case in which it used it as an interpretive guide involved indecency with a minor by exposure with intent of sexual arousal or sexual conduct with the child, both of which are narrower than the Maryland statute. And I thought we'd established that the only thing that was precedential in Rodriguez-Rodriguez was a holding that that constituted, that conduct, that they're looking to as a guide, constitutes sexual abuse of a minor under the BIA. So how do we get that to cover the Maryland statute? Well, so the best way that I see the board's decision is that when there is an intent to sexually gratify, it's going to be per se sexually abusive. The intent to gratify, and this is actually what the Fifth Circuit did in Contreras in a decision, where basically they were looking at the common sense definition as this court did in Diaz-Ibera. And what they said was basically that you can find that an intent to gratify is per se abusive. You're misusing the minor. That is without question going to fall into it. That is the type of abuse that was found in the board. But that doesn't mean— I agree. Maryland doesn't require an intent to gratify. Right. It doesn't mean that that's the only way to be abusive is where I was going with that. You know that if that intent is there, it's going to be abusive. But what you know from the board's definition is that it was applying it in that context, but that it wasn't limiting it with that intent in recognition of the fact that there could be— It wasn't limiting it necessarily or not limiting it necessarily. Right. Because it talks about it being a guide. Exactly. But as a guide, the way that all the other courts that have reviewed this issue—and by the way, with the exception of the Ninth Circuit, there has not been a court to reject the board's interpretation in that matter. Well, yes. And its dissent in Velasco, which as my opposing counsel pointed out, is a published decision where the Ninth Circuit does recognize that this is more than just an advisory and that to the extent that it is a guideline, it's not an uncommon way of creating a definition to leave flexibility for case-by-case adjudication. And there are lots of—I think the Velasco case pointed out non-serious political crimes and the Aguirre decision was likewise sort of a looser case-by-case definition and that was upheld by the Supreme Court as an example of how an agency does not need to come up with something so strict, hard, and fast in terms of its interpretation. But this isn't even a definition. Well— And so how can you ever perform a categorical analysis if you don't even have a definition against which to measure it? It's not—the board did not refer to it as being the outer limit, I guess I should say, but it did basically make it an interpretive touchstone. And understanding it in that way is key because when you look at the sort of the mentality of protecting children, they thought that that encompassed that. But it's hard—unfortunately, people find all kinds of creative, horrible, terrible ways to abuse children. It's—I— But there's really big consequences for the individual involved. And doesn't the law give that individual the right to at least know what the standard is? And how does the individual know what the standard is when looking at this case? Well, sexual abuse, I mean, in terms of the common, ordinary definitions, involve basically the use or misuse of a child, you know, whether mentally or physically or emotionally. So it's an intent-based crime. I think someone knows their own intent. I think that's what usually, when provisions are vague, sort of the doctrine of constitutional vagueness, what often brings it down to a level that gives people notice is the idea of the mens rea involved. Yeah, but the Maryland court has taken a different view of what is required of sexual abuse of a minor in Maryland. Oh, under the Maryland statute. I was talking about in terms of how the board is— I understand that, but we're fitting the two together. Right. Well, they've taken an expansive—they want to protect children in a broad manner, understandably so. But what they haven't done is gone beyond—what they haven't done is someone's simple negligence, for example, in failing to intervene on a child in that sort of— I don't know. I think that letting your child be subject to someone else's abuse is pretty close to negligence. Oh, it certainly is, but it's a little bit more than just plain negligence in terms of the way that the— Let me put it to you this way. Right. If the Texas statute was the BIA's definition, the Texas statute that it had in front of it in Rodriguez-Rodriguez, then you would concede that the Maryland law is not—it does not come within the BIA definition, wouldn't you? You'd have to. If the definition were— If the Texas statute, which the BIA was interpreting in Rodriguez-Rodriguez, remember, and that's the one it says that a conviction under that statute constitutes sexual abuse of a minor for BIA purposes. If that was the standard, this conviction wouldn't come—wouldn't qualify. The standard isn't being defined by the statute that was being applied to it. All we have is the BIA telling us they're looking at something for a guide, and then they're applying that guide to the Texas crime. Right. So it seems to me that you can quite properly argue that if you came up with something that was the Texas statute, there is precedent, and we have to give it Chevron deference because the board has had the Texas statute before, and it has said something within the Texas statute comes within its guide in a precedential opinion. So we'd have to do that. But that's not what we have here. We have the board going to another case in a different statute where we don't know what the elements are, except we know that they're at least what's in the Texas statute. And that was the question that my colleague was trying to get to you. How does someone know what the BIA definition is other than the Texas statute? Well, the reference to the 3509 is— But we know that they didn't adopt that, so there's some room somewhere or another. There is, and the board has yet to—the board simply has not found in any case yet where it's looked outside of that 3509. I do not recall seeing a case or a circuit court case that wasn't referring to 3509. I understand that the board did not want to bind itself to saying that that is— So now we're looking at not—we're looking at different deference. We're not looking at Chevron deference. We don't have a published opinion. We're looking at how much sense the board's decision makes here, really. How persuasive we find it. To the extent that you're applying it to a statute that wasn't at issue in Rodriguez, that's what you're saying. Yes, it isn't an exact—it isn't a match to the statute that was in Rodriguez, absolutely. But it is a match to the interpretive touchstone that the board has identified as—let's put it this way. You can't not know that if you meet 3509, you're going to meet the board's definition. You know that at the very— I don't think you do know that. Well, they're using that as the base. Interpretive touchstone, but I read what they said is that it could be narrower than this and it could be broader. I read it to mean sort of this is the—as a minimum. It doesn't say that. It doesn't use the word minimum, but in the way that it references it, it says that it finds it as the most logical, sort of the most in line with what Congress intended in terms of its— Right. But the Maryland statute's even broader. The government's position is that it's not broader because of the way that the— It's broader than the Texas statute. It's broader than the Texas statute because it does not limit to certain types of intent. And the intent could be for a variety of reasons, as the brief stated. I mean, people abuse for so many horrible reasons, and likely it is sexual gratification. Probably nine times out of ten it could be. But children can be abused to assert authority and control for monetary gain, as it pointed out. There's different reasons, and the reason that someone has for abusing a child shouldn't make it any more or less serious in terms of looking at the child as equally harmed or equally— What's the standard that we look to? I mean, you were arguing Chevron deference in your brief, but it seems that you've moved away from that now and that you're conceding that it's a little bit more murky. Chevron deference in terms of to Rodriguez, Rodriguez, but in the application to the statute— Because of what Rodriguez says, it can't be given that kind of very broad stamp of approval because we don't really know what it says. It sounds to me like you're conceding that we really don't know what it says, and that it sort of is in a situation where the board— I mean, it reminds me kind of of Carnac, you know, those old TV shows, where you don't know what it is until you hold it up to your forehead. It's like pornography. You know it when you see it, right? I mean, I don't—obscenity, I'm sorry. Sorry, obscenity, right. You know, it's—but we know enough about the board's definition because when the board is given a broad generic term in the aggravated felony provisions, it has a lot of flexibility that way, and that's why the board wasn't going to be confined to any one particular statute because when you look at the other aggravated felony provisions, Congress chose when it wanted to indicate a particular statute and a limited way of defining it, it did so. Here it did not, and it put sexual abuse of a minor right alongside rape and murder, some of the most heinous crimes out there, indicating that it should be taken very seriously and that this is something very important, that this is a bad crime. And the board, I think, wanted to give itself room to understand how states can define these types of crimes in various manners and because abuse can take on such various different forms. But anybody who can read 3509 understands that this Maryland statute would fall within it by virtue of how the Maryland courts have construed the statute. And that's because if you look, the most recent case that I found, Schmidt, which is... I think that is just wrong. You know, I think, well, let me back up. I think you cannot read Rodriguez, Rodriguez and know that the Maryland statute fits within what the court said there because it hasn't given us a definition. The government... If it had adopted 3509 and said that's our definition, all right, but it didn't. It adopted it as an interpretive touchstone. I mean, and the fact that it didn't has to tell us something. I mean, you know, they could have said we're doing this and this is the bare minimum or we're looking, we looked at these other federal statutes, we don't want them, we want this broad one. But it didn't do that. The board, you know, has the authority to keep doing a case-by-case adjudication. It does. It does. But then it's not entitled to Chevron deference. And you've agreed to that. We have to look and see if that makes sense. If the court does... I mean, obviously there's Skidmore deference too, the power to persuade. If this court defines... I mean, the other courts, and I refer to the second, the third, the seventh, they have all given Chevron deference to the board's decision in Rodriguez, Rodriguez. They have not... No, no, no, no, no. I didn't say we wouldn't give Chevron deference to Rodriguez, Rodriguez, but we can't give... Oh, I'm sorry. I thought you agreed to give Chevron deference to the cases, to the decision. To the application. Because they're not presidential. We're in agreement on that, right? Right. Yes, this particular board decision is not precedential. But we're asking the court to give Chevron deference to the board's definition just like the majority of courts to decide the issue. The Ninth Circuit, Your Honor, I see that my time is expiring. The Ninth Circuit is the only court that has taken a position directly contrary. It leads to absurd results that I pointed out in my brief. Children under 12 are not going to be included as being sexual abuse of a minor. Those are the most vulnerable. In this case, it was a 5-year-old who was belated. So it leads to a very absurd result, and the government strongly persuades the court not to follow such a rule for all the reasons set forth in my brief. I just wanted to point out that there's nothing wrong with the way that the court did define sexual abuse of a minor in Diaz-Iberra. That was in a crime of violence context. Maybe it makes more sense to include elements. Gratification is more physically oriented. It's a more physical idea. And that crime of violence is specifically a different aggravated felony provision within the Immigration and Nationality Act. And so there's no reason at all, as this court, I think, recognized earlier, that that was not an agency decision, and it's also not an agency interpretation. And so there can be a difference that way. And also, you know, the idea that there can be different intents doesn't affect the sexual abuse of a minor, which is what is actually written in the aggravated felony provision. Unless the court has any further questions. Thank you. Do you have any rebuttals? All right. We will come down and greet the lawyers. Ask the court to adjourn, our clerk to adjourn for the day, and then come down and greet the lawyers. This honorable court stands adjourned until tomorrow morning at 930. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Barbara Milano Keenan, Stephanie D. Thacker